UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:04CV-688-R

VICKI TUDOR                                                                                                PLAINTIFF

v.

BELLSOUTH TELECOMMUNICATIONS, INC.                                          DEFENDANT

**MEMORANDUM OPINION**

This matter is before the Court on motion to alter, amend or vacate judgment (Dkt. # 43) of Plaintiff Vicki Tudor ("Tudor"). Defendant Bellsouth Telecommunications, Inc. ("BellSouth") responded (Dkt. # 45), and this matter is now ripe for adjudication. For the reasons that follow, the Court **DENIES** the Plaintiff's motion.

**BACKGROUND**

The facts giving rise to the complaint in this case are set forth at full length in the Court's Memorandum Opinion of January 31, 2006; therefore, in the instant opinion the Court will detail only the factual background related to the current motion. In the January 31 opinion, the Court granted the Defendant's motion for summary judgment on Plaintiff's claims of wrongful termination and retaliation. Specifically, the Court held that Plaintiff had failed to successfully rebut BellSouth's proffered non-discriminatory reason for her termination, and that she had failed to make out a *prima facie* for retaliation. On February 9, 2006, Plaintiff filed a motion seeking to alter, amend or vacate the judgment. The motion, not supported by a memorandum or brief, simply seeks to alter, amend or vacate "pursuant to the affidavit attached hereto." The

1

affidavit is signed by the Plaintiff, and contains a number of allegations relating to Tim Anito, who held the same position as Ms. Tudor and also experienced problems meeting his sales quotas around the same time that Ms. Tudor did. Plaintiff argued that Mr. Anito was a similarly-situated male employee who was treated differently than she was, and sought to use BellSouth's treatment of Mr. Anito to demonstrate that its proffered reason for terminating her - poor performance - was pretextual. Ms. Tudor's affidavit, then, appears to have been filed in an attempt to alter the Court's conclusion that Mr. Anito and Ms. Tudor were not similarly situated. (Because no explanation was provided, either with the motion or by way of reply to BellSouth's response to the motion, the Court cannot be certain that this is the intended import of Ms. Tudor's affidavit.)

Plaintiff's Affidavit alleges, in pertinent part, that: "Tim Anito was assigned numerous accounts from Robert Graham to aid him in meeting his assigned quota. Example[]s are: Electronic Office of [Asheville], N.C., Sprint in North Carolina, and Sprint in South Carolina ([n]one of which are in his geographic territory[]). Tim Anito was assigned to Knoxville, TN." (Dkt. # 43, Attachment # 2, at ¶ 5). She further alleges that:

> Tim Anito received credit for sales made by the business partners listed in paragraph 5. The sales did not actually come from Rod Potter but when Rod Potter's Electronic Office of [Asheville], N.C. transferred to Tim Anito all sales made by Electronic Office of [Asheville], N.C. Tim Anito received credit for the sales.[] The same is true for Sprint N.C. and Sprint S.C.

(*Id.* at ¶ 7). She then alleges that:

> Tim Anito did not substantially improve his sales volume while on his performance plan. [It] increased greatly in October 2003 due to sales sold by Electronic Office of [Asheville], N.C. and National Guard sold by Sprint. The credit union and National Guard were sold month[]s before Tim Anito's performance plan began .... BellSouth only transferred existing sales to Tim Anito during his performance plan, thereby artificially inflating his quota

2

numbers.
(*Id.* at ¶ 12). She alleges that without these sales, she and Mr. Anito "sold the same amount of product" under their respective performance plans." (*Id.* at ¶ 13). Plaintiff then alleges that she had at least one phone conversation in August of 2004 with Mr. Anito in which "he said he was at 78% of his quota" and that this did not meet his quota requirement. (*Id.* at ¶ 14). She alleges that he also said that he was receiving a quota reduction and that this is what ultimately allowed him to meet the goals of his performance plan. (*Id.* at ¶¶ 15-16).

Defendant, as part of its response, filed an affidavit from Mr. Anito. Mr. Anito states that he "did not receive the accounts listed in [Plaintiff's] affidavit in order to help [him] meet quota" but that he was assigned the Electronic Office of Asheville, N.C. account because, being located in the eastern Tennessee area he was close to Asheville. (Dkt. # 45, Attachment # 1, at ¶ 5). He further states that "[he] recruited and hired Sprint in 1996 as a business partner for BellSouth's entire nine-state region, and the Sprint account and resulting sales have always been [his]. Sprint's headquarters was located in Bristol, Tennessee, which was within [his] Tri-Cities territory." (*Id.*). He also notes that the Electronic Office of Asheville, N.C. account "contributed less than 1% to [his] total sales during the time that [he] was on a performance improvement plan." (*Id.* at ¶ 6). With respect to the claim that he was not on track to meet his quota in August 2004, Mr. Anito notes that he "was not expected to attain 100% of [his] 2004 annual quota during only the first eight months of that year" and that the 78% figure "mean[t] [he] was meeting the requirements of [his] performance improvement plan and was on track to be at 100% of quota by end of year." (*Id.* at ¶ 9).

Ms. Tudor's affidavit also contains several allegations with respect to Mr. Anito's ultimate decision to accept a "demotion" from Senior BPM to BPM. They seem to indicate that

3

Ms. Tudor seeks to establish that Mr. Anito's demotion was effective in 2004 as opposed to 2005; however, it is unclear to the Court what, if any, signficance this date would have for Plaintiff's case even if such a fact were accepted and considered.

## DISCUSSION

As a preliminary matter, the Court notes that BellSouth objects to the Plaintiff's Motion on grounds that it was filed without the memorandum required by local rule. Local Rule 7.1(a) requires that "each motion must be accompanied by a supporting memorandum" and notes that failure to file such a memorandum is "grounds for denying the motion." Federal Rule of Civil Procedure 7(b)(1) also requires that a motion "state with particularity the grounds therefor." As discussed above, Plaintiff's motion failed to provide a supporting memorandum and the motion failed to state, with particularity or otherwise, the grounds therefor. It only made reference to the Plaintiff's affidavit but did not explain how such assertions, even if presumed to be true, would be grounds for altering the judgment.

Even if the Court were to consider Plaintiff's motion in spite of these procedural failings, no change to the January 31, 2006 summary judgment opinion would be made. Plaintiff's affidavit seeks, it appears to the Court, to suggest that Mr. Anito was "rescued" from his failing performance by BellSouth, and that it was BellSouth's actions, not his, that allowed him to improve his sales and avoid termination. However, the *de minimis* size of the Electronic Office of Asheville account, combined with the fact that Mr. Anito's location (just across the Smoky Mountains from Asheville) made him the logical choice to take it over, belie the implication that his management of that account saved him from termination. Further, Ms. Tudor has no evidence to indicate that Mr. Anito was not the generator of the Sprint sales. Finally, she does

4

not explain the significance of the circumstances surrounding Mr. Anito's decision to accept the change from Senior BPM to BPM.

## CONCLUSION

For the reasons outlined above, Plaintiff's Motion is **DENIED**. An appropriate order shall issue.